UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BEXTERMUELLER NEWS DISTRIBUTORS, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| LEE ENTERPRISES, INC., et al., | ) ) ) |
| Defendants. | ) |

Case No. 4:22-cv-00344-SPM

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Count III for Tortious Interference With Business Expectancy and Motion to Strike or Dismiss Count V for Punitive Damages. (Doc. 14). The motion has been fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 13). For the following reasons, the motion will be granted in part and denied in part.

**I.    FACTUAL BACKGROUND**

Plaintiffs are several entities and individuals, each of whom is engaged in the business of home delivery of St. louis Post-Dispatch newspapers to customers. Pet'n ¶ 1. Defendants are the St. Louis Post-Dispatch, LLC (the publisher of the St. Louis Post-Dispatch newspaper); Pulitzer, Inc.; Lee Enterprises, Inc.; and Lee Enterprises Missouri, Inc. *Id.* ¶¶ 2-4. Each of the Plaintiffs has an agreement with Defendants for the delivery of the St. Louis Post-Dispatch newspaper and other products throughout the St. Louis Metropolitan area (the "Home Delivery Agreements"). *Id.* ¶ 6. Pursuant to the Home Delivery Agreements, each Plaintiff has an exclusive right to home delivery of the St. Louis Post-Dispatch and its products within a specified geographic territory. *Id.* ¶ 14.

1

The Home Delivery Agreements also provide that Defendants will not "aid, abet or assist in the creation of other delivery systems or distributors" within the agreed-upon territories of the Plaintiffs. *Id.* ¶ 15. Sometime after the execution of these agreements, Defendants created a system of e-delivery of the St. Louis Post-Dispatch newspaper to customers who reside within Plaintiffs' territories. *Id.* ¶ 18.

On February 8, 2022, Plaintiffs filed the instant action against Defendants in the Circuit Court for the City of St. Louis, Missouri, asserting five counts arising from Defendants' alleged creation and use of the e-delivery system: (I) breach of contract, (II) breach of implied covenant of good faith and fair dealing, (III) tortious interference with business expectancy, (IV) malicious trespass to personalty (violation of Mo. Rev. Stat. § 537.330), and (V) punitive damages. In Count III, tortious interference with business expectancy, Plaintiffs allege that "Plaintiffs have a valid business expectancy [their] on-going business, including the home delivery of St. Louis Post-Dispatch newspapers," *id.* ¶ 27; that "Defendants have knowledge of Plaintiffs' valid business expectancy [their] on-going business of home delivery of St. Louis Post-Dispatch newspapers," *id.* ¶ 28; that "Defendants intentionally interfered with Plaintiffs' business expectancies by among other things creating a new delivery system of the newspaper in the Plaintiff[s'] geographic areas and territories," *id.* ¶ 29; that "Defendants' actions were a deliberate and intentional attempt to cause harm to the goodwill and business reputation of Plaintiffs and to, among other things, decrease the value of their newspaper delivery routes for which they paid valuable consideration," *id.* ¶ 30; that "Defendants took affirmative actions to interfere with Plaintiffs' business expectancies, and but for Defendants' actions, Plaintiffs would have realized the expectancies in [their] continued business, including, the past, present and future values of Plaintiffs' delivery routes," *id.* ¶ 31; that "Defendants' intentional interference with Plaintiffs' business expectancies

2

was without justification or excuse in that Defendants were motivated by the improper motive to harm Plaintiffs, and as a result of Defendants' conduct, Plaintiffs have been damaged," *id.* ¶ 32; and that "Defendants' conduct was outrageous due to their improper motive or reckless indifference to the Plaintiffs' rights thereby justifying an award of punitive damages," *id.* ¶ 33.

Defendants removed the action to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(a), 1441(b), and 1446. Defendants now move to dismiss Plaintiffs' Counts III (tortious interference with business expectancy) on the ground that the claimed expectancies arise from the Home Delivery Agreements and thus fail as a matter of law. Defendant also argue that because the tortious interference claim fails, the punitive damages claim in Count V should be dismissed, because no claim other than Count III can support a claim for punitive damages. In the alternative, Defendants ask the Court to strike Count V pursuant to Mo. Rev. Stat. § 510.261.5. After the motion to dismiss was filed, but before it was decided, some Plaintiffs voluntarily dismissed their claims.[1]

## II.    LEGAL STANDARDS

For a claim to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, but it need not accept the legal conclusions. *Iqbal*, 556 U.S. at 678. The Court must make "all

---

[1]The claims of Plaintiffs J-Y Distributors, LLC; Teep Enterprises, Inc.; Glen Eddings; and Doyle Underwood were dismissed with prejudice. The claims of Plaintiff Brian Taylor were dismissed without prejudice. The claims of Plaintiffs Bextermueller News Distributors, Inc. and Tom Richards remain pending.

reasonable inferences in favor of the nonmoving party." *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019). Additionally, "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either on its own or on a motion made by a party. "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). "Striking a party's pleading, however, is an extreme and disfavored measure." *Id.*

### III. DISCUSSION

Because this Court's jurisdiction in this case is based on diversity of citizenship, state law governs the substantive issues in this case. *See, e.g.*, *Am. Home Assur. Co. v. Pope*, 591 F.3d 992, 998-99 (8th Cir. 2010) ("In a diversity action, such as this, we use state substantive law to govern our analysis.") (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties agree that Missouri provides the governing law. In interpreting state law, a federal court "bound by the decisions of the state's highest court." *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006) (quoting *Eichenwald v. Small*, 321 F.3d 733, 736 (8th Cir. 2003). "When a state's highest court has not decided an issue, it is up to [the] court to predict how the state's highest court would resolve that issue.'" *Id.* (quoting *Continental Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006)). In making that determination, the decisions of intermediate state appellate courts are persuasive authority. *Id.*

### A. Defendants' Motion to Dismiss Count III (Tortious Interference With Business Expectancy)

Under Missouri law, to establish a claim for tortious interference with business expectancy, a plaintiff must show: "(1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. 2006).

Here, Plaintiffs allege that they had valid business expectancies in their ongoing business of home delivery of St. Louis Post-Dispatch newspapers, including the past, present, and future values of those delivery routes, and that Defendant interfered with Plaintiffs' business expectancies by creating a new system of delivering the St. Louis Post-Dispatch to customers in the Plaintiffs' geographic areas and territories. Defendants argue that Plaintiffs' claim fails as a matter of law, because the alleged business expectancies at issue arise entirely from Plaintiffs' Home Delivery Agreements with Defendants, and a plaintiff cannot bring a tortious interference claim based on a business expectancy against a party to the contract that created that business expectancy.

As Defendants correctly point out, it is well established under Missouri law that "when a contract alone creates a business expectancy, [a] plaintiff cannot bring a claim for interference with a business expectancy against a party to that contract." *Cole v. Homier Distrib.* Co., 599 F.3d 856, 861 (8th Cir. 2010) (quoting *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 191 (Mo. Ct. App. 2007)); *accord S R Distrib., LLC v. Pepperidge Farm, Inc.*, No. 4:19CV00747 SRC, 2019 WL 5394501, at *6 (E.D. Mo. Oct. 22, 2019). *See also Juris. Wireless Commc'ns, Inc. v. CyberTel Corp.*, 26 S.W.3d 300, 302-03 (Mo. Ct. App. 2000)) (stating, "the tort of interference with a business expectancy cannot lie against a party to a contract which creates the business expectancy"; affirming dismissal of the plaintiff's tortious interference claim and stating, "because any duty

5

owed to [the plaintiff] by [the defendant] arose from the [contracts between the plaintiff and defendant], [the plaintiff's] remedy, if any, was for the defendant's breach of those agreements."). *Cf. Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 602 (Mo. 2013) ("[A]n action for tortious interference with a business expectancy will lie against a third party only.") (quoting *Zipper v. Health Midwest*, 978 S.W.2d 398, 419 (Mo. Ct. App. 1998)).

*Cole*, cited by Plaintiffs, is instructive. In *Cole*, the plaintiff entered into an agreement with the defendant under which the plaintiff would be the exclusive distributor of Farm Pro tractors and would establish dealerships for the resale of Farm Pro tractors. 599 F.3d at 859. The defendant later began selling Farm Pro tractors directly to the plaintiff's dealers. *Id.* at 860. The plaintiff brought a tortious interference claim against the defendant, arguing that the defendant had tortiously interfered with the plaintiff's dealer relationships by selling directly to the dealers in violation of the parties' agreement. *Id.* at 861. The district court dismissed the claim, and the Eighth Circuit affirmed. *Id.* at 861-62. The Eighth Circuit first noted the general Missouri rule that "when a contract alone creates a business expectancy, [a] plaintiff cannot bring a claim for interference with a business expectancy against a party to that contract." *Id.* at 861 (quoting *BMK Corp.*, 226 S.W.3d at 191, and citing *Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517, 525 (Mo. Ct. App. 2007) & *CyberTel Corp.*, 26 S.W.3d at 302). It then noted that "[t]his rule does not mean that 'a party may not have a valid business expectancy in a preexisting and independent business relationship just because the preexisting relationship relies upon a third-party supply contract to furnish the subject of their agreement.'" *Id.* at 861-62 (quoting *BMK Corp.*, 226 S.W.3d at 191). It thus found that the "critical issue" was "whether [the plaintiff] had independent business relationships with [third parties] predating its agreement with [the defendant]." *Id.* at 862. The court found no such independent, preexisting relationships, stating:

6

> [The plaintiff's] relationship with its dealers arose only because it entered into the Distributorship Agreement with [the defendant]. . . . [The plaintiff] did not begin to establish these dealerships until after it became a licensed Farm Pro distributor. [The plaintiff] has thus failed to articulate any independent business relationship with its dealers that predated its agreement with [the defendant]. Without this, we must dismiss [the plaintiff's] claim for tortious interference.

*Id.*

*S R Distributing, LLC v. Pepperidge Farm, Inc.* is also instructive. In *Pepperidge Farm*, the plaintiff entered into a distributorship agreement with Pepperidge Farm for the plaintiff, a distributor, to sell Pepperidge Farm products. 2019 WL 5394501, at *2. Pepperidge Farm then purchased the rights to distribute to its products to "Club Stores" such as Costco. *Id.* at *1. The plaintiff distributor brought a tortious interference claim against Pepperidge Farm, alleging that the plaintiff had a valid business expectancy with the Club Stores within its exclusive territory to receive commissions based on Pepperidge Farm's shipment of goods to the Club Stores. *Id.* at *6. Relying on *Cole*, the court noted that "[w]hen a contract alone creates a business expectancy, a plaintiff cannot bring a claim for tortious interference with a business expectancy against a party to the contract." *Id.* It also noted that in the case before it, "[the plaintiff's] relationships with retail stores in its territory result solely from the Agreement with Pepperidge Farm" and that the plaintiff "only received commissions because of its contract with Pepperidge Farm." *Id.* at *7. The court dismissed the tortious interference claim, concluding that "[the plaintiff] cannot bring a claim for tortious interference with a business expectancy because its contract with Pepperidge Farm alone creates the business expectancy." *Id.*

The Missouri Court of Appeals used a similar analysis in *Jurisprudence Wireless Communications, Inc. v. CyberTel Corp.* In that case, the plaintiff and the defendant entered into contracts under which the plaintiff would serve as a dealer of the defendant's products—cellular telephone products and services. 26 S.W.3d at 301. The plaintiff later entered into an agreement

7

with a third party who would serve as a guarantor on certain cellular telephone contracts, and the plaintiff sold discounted cellular services to individuals pursuant to the agreement with the third party. *Id.* The defendant told plaintiff and the third-party guarantor to stop enrolling new customers under this agreement, and the defendant eventually terminated its relationship with the plaintiff. *Id.* The plaintiff brought a claim alleging that the plaintiff had tortiously interfered with the plaintiff's business relationship with the third-party guarantor. *Id.* Affirming the trial court's grant of summary judgment, the Missouri Court of Appeals noted that "the tort of interference with a business expectancy cannot lie against a party to a contract which creates the business expectancy." *Id.* at 302. It found that "because any duty owed to [the plaintiff] by [the defendant] arose from the Sales Agreement and the Equipment Agreement, [the plaintiff's] remedy, if any, was for [the defendant's] breach of those agreements." *Id.* at 302-03.

Here, as in the above cases, the business expectancy alleged by Plaintiffs was created entirely by the Home Delivery Agreements between Plaintiffs and Defendants. Plaintiffs' business expectancies in their ongoing business of delivering St. Louis Post-Dispatch newspapers in particular geographic territories were created by those agreements. The value of Plaintiffs' routes, including the ability of Plaintiffs' to market or sell those routes, also arises entirely from those agreements.[2] Absent the agreements, Plaintiffs would have no expectancy in the ongoing delivery of St. Louis Post-Dispatch newspapers, nor would they have any delivery routes to sell. There is nothing whatsoever in the Petition to suggest that Plaintiffs had relationships or expectancies that

---

[2] In their brief in opposition to the motion to dismiss, Plaintiffs argue that their claim is based at least in part on their expectancies that they would be able to market and sell those routes for value. Plaintiffs acknowledge that the Petition does not specifically mention that Plaintiffs had an expectancy of marketing or selling their routes, but they argue that the allegations in the Petition are sufficient to of their routes. The Court finds that for purposes of the instant motion, drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs have adequately alleged that they had an expectancy of being able to sell their routes.

8

pre-dated the Home Delivery Agreements, either with the customers to whom the newspapers are delivered or with the potential future buyers of the delivery routes. This case falls squarely within the rule that "when a contract alone creates a business expectancy, [a] plaintiff cannot bring a claim for interference with a business expectancy against a party to that contract." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 191 (Mo. Ct. App. 2007)).

Plaintiffs attempt to distinguish the above cases on the ground that in those cases, the defendant was alleged to be interfering in the plaintiff's expectancies with the plaintiff's customers, whereas in the instant case, Defendants are alleged to be interfering in Plaintiffs' expectation of the future sale of their business. The Court does not find that distinction legally significant. Nothing in the cases above suggests that their holdings would have been different had the contract at issue created a business expectancy of selling a business rather than a business expectancy of selling a product to a customer. The central question in each of those cases was whether the business expectancy at issue was created solely by the contract. Here, as in those cases, it was. Plaintiffs' remedy lies in a contract claim, not a tort claim.

To support their argument that these claims should not be dismissed, Plaintiffs rely on *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592 (Mo. Ct. App. 2000). In *Weicht,* the plaintiffs entered into contracts in the early 1980s with the defendants, Suburban Newspapers, under which the plaintiffs had the exclusive right to distribute newspapers within a defined geographic area and to sell those distribution rights. *Id.* at 595. For many years prior to the lawsuit, Suburban Newspapers was aware of, and fostered, the purchase and sale of its delivery routes. *Id.* In 1994, Suburban Newspapers took various actions that the plaintiffs allege destroyed the value of their routes, including hiring persons without ownership interests to deliver routes,

9

intentionally breaching its contracts with some of the plaintiffs, and reducing pay schedules in renewal contracts. *Id.* The plaintiffs asserted, *inter alia*, claims of tortious interference with economic expectancy. *Id.* The district court dismissed the tortious interference claim, reasoning that the plaintiffs had not alleged that they were currently attempting to sell their routes, that they had entered into negotiations with particular persons in regard to such a sale, or that they had contracts to sell routes. *Id.* at 598. On appeal, the plaintiffs argued that they were not required to allege specific purchasers, negotiations, or contracts entered into in order to allege a business expectancy in the sale of their routes. *Id.* The Missouri Court of Appeals agreed with the plaintiffs, noting that the plaintiffs "alleged facts showing an ongoing market for their routes, of which Suburban newspapers was aware," and that a reasonable jury could find that the plaintiffs "had a valid business expectancy of selling their routes for similar or greater prices than they paid for them without pleading specific potential purchasers." *Id.* The court further noted that the plaintiffs did not allege that the contract between them and Suburban Newspapers created the alleged expectancy, but rather, that the expectancy arose from Suburban Newspapers' alleged conduct. *Id.* The court concluded that the plaintiffs had alleged facts necessary to meet the elements of tortious interference with business expectancy. *Id.* at 599.

      The facts of *Weicht* certainly bear a significant resemblance to the facts of this case. However, after careful consideration, the Court agrees with Defendants that *Weicht* is distinguishable from the case at bar. Most significantly, it appears that the court in *Weicht* was not presented with the case law or arguments on which the instant motion to dismiss is based. It does not appear that the defendant in *Weicht* argued that the tortious interference claim failed as a matter of law because the business expectancy at issue arose from a contract to which the defendant was a party, and thus the court did not have occasion to examine or address the cases and rule on which

Defendants rely in this case. Instead, the court in *Weicht* was primarily concerned with the question of whether the plaintiff could have a business expectancy in the future sale of its routes despite not having alleged specific purchasers, negotiations, or contracts entered into.

*Weicht* is also distinguishable because in *Weicht*, unlike the present case, the plaintiffs did not rely solely on the contract as the source of the expectancy, but also on the defendants' conduct, including fostering the purchase and sale of its delivery routes. Here, there is no such allegation.

In their response, Plaintiffs suggest that if given leave to amend their complaint, they could include allegations that Defendants have for years fostered the sale and/or assignment of newspaper distribution agreements among carriers, thereby bringing the facts of this case closer to those in *Weicht*. But the Court finds that even that even if such allegations were included in an amended complaint, Plaintiffs' claim would not survive. As discussed above, the court in *Weicht* did not have occasion to consider the arguments presented here. To the extent that *Weicht* cannot be distinguished on its facts, the Court notes that *Weicht* is only persuasive authority and that this Court's task is to predict how the Missouri Supreme Court would rule on this issue. In light of the numerous other decisions from the Missouri Court of Appeals, the Eighth Circuit, and district courts within the Eighth Circuit that appear to support a conclusion opposite to that reached in *Weicht*, combined with the fact that the court in *Weicht* did not have occasion to address this issue directly, the Court predicts that the Missouri Supreme Court would follow those cases rather than *Weicht*.

For all of the above reasons, the Court will grant Defendants' Motion to Dismiss Count III.

### B. Defendants' Motion to Dismiss Count V (Punitive Damages)

Defendants next request that the Court dismiss or strike Count V (punitive damages) because once the tortious interference claim has been dismissed, no claims remain that may allow

for punitive damages.

Defendants first argue that punitive damages are not available for Count I (breach of contract) or Count II (breach of the implied covenant of good faith and fair dealing). The Court agrees that those claims provide no basis for a punitive damages claim. *See Peterson v. Cont'l Boiler Works, Inc.*, 783 S.W.2d 896, 902-03 (Mo. 1990) (stating, "The general rule is that punitive damages may not be recovered in breach of contract actions"; noting exceptions for situations where the breaching party's conduct amounts to an independent tort or is coupled with violations of fiduciary duty); *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405 (Mo. Ct. App. 2000) (holding that the covenant of good faith and fair dealing is a contract claim); *Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180, 189 (Mo. Ct. App. 2017) (claim of breach of duty of good faith and fair dealing in connection with business relationship would not support punitive damages.).

Defendants next argue that punitive damages are not available under Count IV (malicious trespass to personalty in violation of Mo. Rev. Stat. § 537.330). Defendants offer two arguments in support of this contention. First, Defendants argue that because § 537.330 allows a successful plaintiff to recover "double the value" of the property damaged or destroyed, it already contains a punitive element, and no additional punitive damages are permitted. But Missouri courts have rejected that argument. *See State ex rel. Smith v. Greene*, 494 S.W.2d 55, 59 (Mo. 1973) ("We are not persuaded that Sec. 537.330 abrogated the common law right of punitive damages absent some clear legislative intent to do so, and we find no such intent."); *Weicht*, 32 S.W.3d at 600 ("[T]he Missouri Supreme Court . . . conclude[d] that [§ 537.330] did not abrogate the common law right of punitive damages.") (citing *Greene*, 494 S.W.2d at 59).

Finally, Defendants argue that the claim seeking punitive damages should be stricken

because Plaintiff has not complied with the requirements of the recently-enacted Mo. Rev. Stat. § 510.261(5), which states, "No initial pleading in a civil action shall contain a claim for a punitive damage award. Any later pleading containing a claim for a punitive damage award may be filed only with leave of the court." Although the Eighth Circuit has not addressed the question of whether § 510.261(5) applies in federal court proceedings, federal district courts in Missouri have consistently held that it does not. *See, e.g., Davis v. ALS Express Trucking, Inc.*, No. 4:20-CV-1672-RLW, 2022 WL 3153712, at *1-*2 (E.D. Mo. Aug. 8, 2022); *Ryan v. United Recovery & Remarketing, LLC*, No. 4:21-CV-01324-JAR, 2022 WL 1421517, at *2 (E.D. Mo. May 5, 2022); *Gaydos v. Gully Transportation, Inc.*, 4:21-CV-388-SPM, 2021 WL 4963523 (E.D. Mo. Oct. 26, 2021); *Kilburn v. Autosport Acquisitions, LLC*, No. 1:20-CV-211-ACL, 2021 WL 307550, at *1-*2 (E.D. Mo. Jan. 29, 2021). As this Court explained at length in *Gaydo*s, this Court is persuaded by the reasoning in these cases and finds that the pleading requirements in this case are governed by Federal Rule of Civil Procedure 8 and not by Mo. Rev. Stat. § 510.261(5).

For all of the above reasons, Defendants' motion to dismiss or strike the claim for punitive damages will denied.

### IV.    CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs have failed to state a claim of tortious interference with business expectancy against Defendants. The Court further finds that the punitive damages claim should not be stricken. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Count III for Tortious Interference with Business Expectancy and Motion to Dismiss Count V for Punitive Damages (Doc. 14) is **GRANTED IN PART AND DENIED IN PART**, as follows: the motion to dismiss Count III is **GRANTED**, and the motion to dismiss or strike Count V is **DENIED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of February, 2023.